UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

NOBERTO LUGO,

                                                  Case No.:  13CV6450 (JMF)

                Plaintiff,

    vs.

LE PAIN QUOTIDIEN,

                Defendant.

------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT LE PAIN QUOTIDIEN'S MOTION FOR SUMMARY JUDGMENT
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

**GORDON & REES, LLP**

ATTORNEYS FOR LE PAIN QUOTIDIEN
90 BROAD STREET, 23RD FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX:    (212) 269-5505

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

I.      STANDARD OF REVIEW ..........................................................................................6

II.     PLAINTIFF'S NATIONAL ORIGIN DISCRIMINATION CLAIM UNDER
        TITLE VII SHOULD BE DISMISSED ......................................................................7

        A.      Plaintiff Cannot Establish The Fourth Prong Of His *Prima Facie* Case ................8

        B.      Plaintiff Cannot Establish That LPQ's Legitimate, Non-Discriminatory
                Reason For Terminating Him Was Pretextual .......................................................16

III.    PLAINTIFF'S ADEA CLAIM SHOULD BE DISMISSED..........................................17

IV.     PLAINTIFF'S RETALIATION CLAIM SHOULD BE DISMISSED ...........................20

        A.      Plaintiff's Retaliation Claim Should Be Dismissed Because Plaintiff
                Failed To Exhaust His Administrative Remedies ...................................................20

        B.      Plaintiff's Retaliation Claim Should Be Dismissed Because Plaintiff
                Cannot Establish His *Prima Facie* Case And Show LPQ's Legitimate,
                Non-Retaliatory Reason For Terminating Him Was Pretextual ..........................22

CONCLUSION............................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Abdu-Brisson v. Delta Air Lines, Inc.
239 F.3d 456 (2d Cir. 2001) ................................................................ 6

Amna v. New York State Dep't of Health
Case No. 08-CV-2806 (CBA)(LB), 2011 U.S. Dist. LEXIS 112577
(E.D.N.Y. Sept. 30, 2011)................................................................ 16

Aslanidis v. United States Lines, Inc.
7 F.3d 1067 (2d Cir. 1993) ................................................................ 6

Bailey v. Colgate-Palmolive Co.
No. 99 CV 3228 (CBM), 2003 U.S. Dist. LEXIS 8175
(S.D.N.Y. May 14, 2003)................................................................ 21

Baity v. Kralik
No. 12 CV 510 (KMK), 2014 U.S. Dist. LEXIS 145836
(S.D.N.Y. Sept. 30, 2014)................................................................ 12

Bennett v. Hofstra University
No. 10 CV 2195 (ADS)(ARL), 2012 U.S. Dist. LEXIS 115315
(E.D.N.Y. Feb. 3, 2012)................................................................ 24

Besse v. Carestream Health, Inc.
No. 13 CV 6370 (MAT), 2013 U.S. Dist. LEXIS 175415
(W.D.N.Y. Dec. 10, 2013)................................................................ 19

Bickerstaff v. Vassar Coll.
196 F.3d 435 (2d Cir. 1999) ................................................................ 10

Brown v. City of Syracuse
673 F.3d 141 (2d Cir. 2012) ................................................................ 7

Brown v. Northrop Grumman Corp.
No. 12 CV 1488 (JS)(GRB), 2014 U.S. Dist. LEXIS 116188
(E.D.N.Y. Aug. 19, 2014)................................................................ 9, 14

Butts v. City of New Dep't of Hous. Pres. & Dev.
990 F.2d 1397 (2d Cir. 1993) ................................................................ 20

Celotex v. Catrett
477 U.S. 317 (1986)................................................................ 6

Chukwueze v. NYCERS
No. 10 CV 8133, 2014 U.S. Dist. LEXIS 101908
(S.D.N.Y July 25, 2014) (Furman, J.)................................................................ 15, 20, 22, 23

Coppola v. Bear Stearns & Co.
499 F.3d 144 (2d Cir. 2007) ................................................................ 6

Cordoba v. Beau Deitl & Assocs.
No. 02 CV 4951 (MBM), 2003 U.S. Dist. LEXIS 22033
(S.D.N.Y. Dec. 2, 2003) ......................................................................................... 21

Cruz v. Coach Stores, Inc.
202 F.3d 560 (2d Cir. 2000) .............................................................................. 22, 23

Deylii v. Novartis Pharms. Corp.
No. 13 CV 6669 (NSR), 2014 U.S. Dist. LEXIS
(S.D.N.Y. June 16, 2014)........................................................................................ 19

During v. City Univ.
Case No. 01 CIV 9584 (BSJ), 2005 U.S. Dist. LEXIS 20405
(S.D.N.Y. Sept. 16, 2005)........................................................................................ 16

Fenner v. News Corp.
Case No. 09 CIV 09832 (LGS), 2013 U.S. Dist. LEXIS 170187
(S.D.N.Y. Dec. 2, 2013) .......................................................................................... 15

Fleming v. Verizon N.Y., Inc.
419 F. Supp. 2d 455
(S.D.N.Y. 2005)........................................................................................................ 21

Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.
136 F.3d 276 (2d Cir. 1998) .................................................................................... 23

Gibbs v. NYS Dept. of Taxation & Finance
No. 04 CV 905 (FB)(LB), 2009 U.S. Dist. LEXIS 23466
(E.D.N.Y. Mar. 20, 2009) ........................................................................................ 25

Gottlieb v. Cnty. of Orange
84 F.3d 511 (2d Cir. 1996) ........................................................................................ 7

Henny v. New York State
No. 08 CV 10981 (KMK), 2012 U.S. Dist. LEXIS 15595
(S.D.N.Y. Jan. 30, 2012).......................................................................................... 24

Higgins v. NYP Holdings, Inc.
836 F.Supp.2d 182 (S.D.N.Y. 2011) .......................................................................... 8

Holcomb v. Iona Coll.
521 F.3d 130 (2d Cir. 2008) ...................................................................................... 7

Jackson v. City of New York
No. 11 CV 3028 (PKC), 2014 U.S. Dist. LEXIS 3476
(E.D.N.Y. Mar. 17, 2014) ........................................................................................ 11

Jeune v. City of New York
No. CV 7424, 2014 U.S. Dist. LEXIS 2574
(S.D.N.Y. Jan. 9, 2014) (Furman, J.)......................................................................... 7

Kamrowski v. Morrison Management Specialist
No. 05 CV 9234 (KMK), 2010 U.S. Dist. LEXIS 10329
(S.D.N.Y. Sept. 29, 2010)........................................................................................ 24

Kamrowski v. Morrison Management Specialist
   No. 05 CV 9234 (KMK), 2010 U.S. Dist. LEXIS 103290
   (S.D.N.Y. Sept. 29, 2010) ............................................................... 10

Kessler v. Westchester County Dep't of Soc. Servs.
   461 F.3d 199 (2d Cir. 2006) ........................................................... 22

Lee v. Healthfirst, Inc.
   Case No. 04 CIV 8787 (THK), 2007 U.S. Dist. LEXIS 14891
   (S.D.N.Y. March 1, 2007) ............................................................... 16

Leibowitz v. Cornell Univ.
   584 F.3d 487 (2d Cir. 2009) ............................................................. 8

Lizardo v. Denny's, Inc.
   270 F.3d 94 (2d Cir. 2001) ............................................................. 10

Mathirampuzha v. Potter
   548 F.3d 70 (2d Cir. 2008) ............................................................. 21

McDonald v. United States Postal Serv. Agency
   547 Fed. Appx. 23 (2d Cir. 2014) .................................................... 17

McDonnell Douglas Corp. v. Green
   411 U.S. 792 (1973) ............................................................... 7, 16, 17

Moguel v. Covenant House/New York
   No. 03 CV. 3018 (RWS), 2004 U.S. Dist. LEXIS 19342
   (S.D.N.Y. Sept. 29, 2004) ............................................................... 21

Mohamed v. Marriot Int'l, Inc.
   905 F. Supp. 141 (S.D.N.Y. 1995) .................................................. 17

Morrison v. Potter
   363 F. Supp. 2d 586 (S.D.N.Y.2005) .............................................. 16

Nakis v. Potter
   No. 01 CV 10047 (HBP), 2004 U.S. Dist. LEXIS 25250
   (S.D.N.Y. Dec. 15, 2004) ............................................................... 10

Nix v. WLCY Radio/Rahall Communications
   738 F.2d 1181 (11th Cir. 1984) ...................................................... 17

Nugent v. St. Luke's/Roosevelt Hosp. Ctr.
   No. 05 CV 5109 (JCF), 2007 U.S. Dist. LEXIS 28274
   (S.D.N.Y. Apr. 18, 2007) ............................................................. 9, 14

Pacheco v. Comprehensive Pharmacy Services
   No. 12 CV 1606 (AJN), 2013 U.S. Dist. LEXIS 164581
   (Nov. 19, 2013) ............................................................................. 19

Payne v. Malemathe
   No. 09 CV 1634 (CS), 2011 U.S. Dist. LEXIS 80649
   (S.D.N.Y. July 22, 2011) ............................................................... 19

Pearson v. Merrill Lynch
  No. 10 CV 5119 (RJS), 2012 U.S. Dist. LEXIS 39456
  (S.D.N.Y. Mar. 12, 2012) ..................................................................................................... 12, 15

Pearson v. The Unification Theological Seminary
  785 F.Supp.2d 141 (S.D.N.Y. 2011) ...................................................................................... 15

Rosenfeld v. Hostos Community College
  No. 10 CV 3081 (JMF), 2013 U.S. Dist. LEXIS 45880
  (S.D.N.Y. Mar. 29, 2013) (Furman, J.)............................................................................... 18, 19

Ruiz v. County of Rockland
  609 F.3d 486(2d Cir. 2010) ................................................................................................. 10, 11

Scaria v. Rubin
  117 F.3d 652 (2d Cir. 1997) .................................................................................................. 17

Sletten v. LiquidHub, Inc.
  No. 13 CV 1146 (NRB), 2014 U.S. Dist. LEXIS 94697
  (S.D.N.Y. July 10, 2014) ...................................................................................................... 23

Tanvir v. New York City Health & Hosps. Corp.
  480 Fed. Appx. 620 (2d Cir. 2012)......................................................................................... 20

Van Zant v. KLM Royal Dutch Airlines
  80 F.3d 708 (2d Cir. 1996) ..................................................................................................... 7

Weinstock v. Columbia Univ.
  224 F.3d 33 (2d Cir. 2000) ..................................................................................................... 6

Williams v. N.Y.C. Hous. Auth.
  458 F.3d 67 (2d Cir. 2006) ................................................................................................. 20, 24

Wilson v. Family Dollar Stores of New York, Inc.
  No. 06 CV 639 (DGT), 2008 U.S. Dist. LEXIS 73452
  (E.D.N.Y. Sept. 25, 2008)................................................................................................... 10, 14

Yu v. NYS Unified Court System Office of Court Administration
  11 CV 3226, 2013 U.S. Dist. LEXIS 97546
  (S.D.N.Y. July 12, 2013) (Furman, J.)................................................................................... 9, 14

Zucker v. Five Towns College
  No. 09 CV 4884 (JS), 2010 U.S. Dist. LEXIS 8544
  (E.D.N.Y. Aug. 18, 2010)........................................................................................................ 19

**Statutes**

29 United States Code
  Section 626 ............................................................................................................................. 20

29 United States Code
  Section 631 ............................................................................................................................. 17

42 United States Code
  Section 2000 .................................................................................................................. 7, 20

Age Discrimination in Employment Act ......................................................... 1, 2, 5, 17, 20, 22, 25

Title VII of the Civil Rights Act of 1964............................ 1, 2, 5, 7, 10, 16, 17, 18, 19, 20, 22, 25

**Rules**

Federal Rules of Civil Procedure
  Rule 56......................................................................................................................... 2, 6

## PRELIMINARY STATEMENT

Plaintiff Noberto Lugo (a/k/a Tito) ("Plaintiff"), who had been employed as a porter at one of defendant Le Pain Quotidien's ("LPQ") café-bakeries, was terminated from his position because he went on an unauthorized vacation for an entire week in November 2012 without providing LPQ's management with notice.  Thereafter, Plaintiff commenced an action with the New York State Division of Human Rights ('NYS DHR"), in which he alleged that he was unlawfully terminated by Ivan Jimenez (Dominican), General Manager, because of his national origin (Puerto Rican) and age.  After the NYS DHR issued a finding of No Probable Cause and dismissed the claim, Plaintiff commenced this national origin discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), both of which are based on the same meritless claims in Plaintiff's NYS DHR action.  Contrary to Plaintiff's allegations, neither his national origin nor his age played any role in LPQ's decision to terminate his employment.

As discussed below, the uncontroverted evidence establishes that Plaintiff (a) cannot satisfy his *prima facie* burden under either statute, *i.e.*, showing the existence of an inference of discrimination, and (b) cannot offer any evidence that LPQ's legitimate, non-discriminatory reason for terminating him was pretext for discrimination.  As to the existence of an inference of discrimination, the evidence clearly shows that Plaintiff relies on nothing more than his *belief* that he was discriminated against, which is insufficient to withstand summary judgment. Plaintiff cannot point to any derogatory and offensive remarks by Jimenez.  Nor can Plaintiff point to any similarly-situated employees outside of his protected class who were treated better in comparable conditions of employment.  Furthermore, as to LPQ's legitimate business reason for terminating Plaintiff, the evidence clearly shows LPQ found that Plaintiff had taken a week

off without submitting a vacation request and obtaining approval, which was a determination that was upheld by LPQ's Human Resources department after it conducted an investigation into it.

To the extent Plaintiff has asserted a retaliation claim under Title VII and the ADEA, such a claim should also be dismissed.  As a matter of procedure, Plaintiff failed to assert a retaliation claim in his NYS DHR complaint, which is required under the exhaustion of remedies doctrine before filing a civil action.  Even if his retaliation claim could proceed, it nevertheless fails on the merits.  The uncontroverted evidence establishes that Plaintiff also cannot establish his *prima facie* case of retaliation because there is no evidence that he engaged in a recognized protected activity and that a casual connection between any protected activity and his termination exists.  Even if Plaintiff could establish his *prima facie* case, which he cannot, Plaintiff cannot overcome LPQ's legitimate, non-retaliatory reason for terminating him.

Because Plaintiff's complaint is legally and factually baseless, this Court should dismiss it on summary judgment in its entirety under Rule 56.

## **STATEMENT OF FACTS**

While LPQ respectfully refers the Court to its accompanying Local Rule 56.1(a) Statement of Undisputed Material Facts for a recitation of the material facts in this matter, it provides a brief summary of the facts in this matter below.

LPQ is an independently owned restaurant chain that was founded in 1990 as an artisanal bakery-café. Defendant's Local Rule 56.1(a) Statement of Undisputed Material Facts ("Def. 56.1 St.") at ¶1.  Today, LPQ maintains over 200 bakery-cafés throughout the world, and owns and operates over a dozen cafes in New York City.  Id. at ¶2.  Each cafe provides full-service dinning and take-away options for customers.  Def. 56.1 St. at ¶3. In or about 2006, LPQ opened a café on First Avenue in the Upper East Side of Manhattan (the "First Avenue Café").  Id. at ¶4.

LPQ hired Plaintiff as a porter in its First Avenue Cafe in or about November, 2006. Id. at ¶11.  In that role, LPQ expected Plaintiff to, among other duties, clean the café and maintain the bathrooms.  Id. at ¶14.  At the time of his termination, Plaintiff typically worked Monday through Friday from 7:30 a.m. to 2:00 p.m. Id. at ¶48.

Jimenez, who had been hired in 2003 and later elevated to general manager, was assigned to be the general manager of the First Avenue Café in or about September 2009. Id. at ¶16-19. Jimenez never made any derogatory or offensive comments about Plaintiff's national origin and age.  Id. at ¶30-35.  Jimenez only raised Plaintiff's national origin once when they first met in or about 2009, at which time Jimenez merely asked Plaintiff where he was from.  Id. at ¶20-22.

 According to Plaintiff, he initially had no issues with Jimenez.  Id. at ¶26.  In 2010, Plaintiff received a positive performance evaluation with a score of 88 out of 100 from Jimenez. Id. at ¶80.  Plaintiff requested vacation on several occasions prior to his termination, which were not denied and were approved by Jimenez.  Id. at ¶81-85.  In 2010, Plaintiff received a raise to $11.00, which made him one highest paid hourly employees in the café.  Id. at ¶60-62.  By 2012, however, Plaintiff felt that Jimenez's attitude began to change towards him and that Jimenez began to be disrespectful.  Id. at ¶26. Yet, Plaintiff could not attribute Jimenez's changed behavior to discrimination based on his protected class, and Plaintiff certainly never complained that he felt subject to discrimination based on his protected class.  Id. at ¶31-34, 109-155.

During the week of Superstorm Sandy, Plaintiff was scheduled to work October 29, 2012 through November 2, 2012.  Id. at ¶87.  However, he did not work on October 29, 2012, October 30, 2012, or October 31, 2012.  Id.   While the First Avenue Café was not open on October 30, 2012 due to the storm, it was open on October 29 and October 31, 2012.  Id.

Plaintiff then worked the following two weeks as scheduled (November 5 through 9, 2012, and November 12 through 16, 2012).  Id.  On Wednesday, November 14, 2012, Mario Vasquez ("Vasquez") (then, one of the Assistant Managers of the First Avenue Café), who was responsible for preparing the following week's schedule, placed Plaintiff on the schedule for the week of November 19, 2012, which was posted by at least Friday of that week. Id. at ¶88.  After the schedule was posted, one of the other porters brought to Vasquez's attention that Plaintiff was going to be away the following week.  Id. at ¶93.  Accordingly, on Saturday, November 17, 2012, Vasquez called Plaintiff who confirmed that he was in Puerto Rico at the time and would be out the following week.  Id. at ¶95.  However, none of the managers, including Jimenez, had ever received any written notice of Plaintiff's request to take the week off.  Id. at ¶90, 92, 96-97. Plaintiff never mentioned anything to management about being unable to work the following week or mentioned being on the schedule that week.  Id. at ¶90-97.   Therefore, when Plaintiff returned to work on November 26, 2012, Jimenez informed him that he was being terminated effective immediately.  Id. at ¶99.

Thereafter, Plaintiff went to LPQ's Human Resources department to complain about being terminated.  Id. at ¶104.  He alleged that he had submitted a vacation slip on October 30, 2012 during the week of Superstorm Sandy, in writing, in an envelope on the door outside of the manager's office at the First Avenue Cafe, and that Jimenez intentionally threw it out.  Id.

LPQ's Human Resources department thoroughly investigated Plaintiff's complaint – it spoke with Plaintiff, Jimenez, Vasquez, and Mykel Gleez ("Gleez") (another Assistant Manager), as well two other employees that Plaintiff claimed saw him submit his time off slip (Benjamin Roldan and Mirtha Monge).  Id. at ¶105.

4

Moreover, the two employees that Plaintiff claimed saw him submit his slip denied witnessing him submit it. Id. at ¶107. With respect to the day that Plaintiff claimed he submitted his request for time off – October 30, 2012 – the café was closed that day due to Superstorm Sandy. LPQ even asked Plaintiff to verify that he submitted his vacation slip on October 30, 2012, which Plaintiff confirmed. Id. at ¶107-108. Accordingly, based on the interviews and the fact that Plaintiff could not have conceivably submitted the request on October 30, 2012, the Human Resources department upheld Plaintiff's termination. Id. at ¶106-107.

## ARGUMENT

In his complaint, Plaintiff alleges that Jimenez, the then-General Manager,[1] terminated him because of his national origin and age in violation of Title VII and the ADEA. See Complaint ("Cmplt.") at pp. 1, Ex. G.[2] Plaintiff maintains such discriminatory intent was evidenced by the fact that Jimenez was disrespectful towards him, favored two Dominican employees over him, failed to give him raises, and occasionally failed to pay him his tips. However, this Court should grant summary judgment to LPQ on Plaintiff's discrimination claims because Plaintiff (a) cannot satisfy his *prima facie* burden, and (b) cannot offer any evidence that LPQ's legitimate, non-discriminatory reason for terminating him is pretext for discrimination.

In his complaint, Plaintiff also checked the line in connection with "retaliation" and makes reference to being subject to "retaliation" in the handwritten portion. Id. at pp. 3-4. Accordingly, to the extent this Court finds that Plaintiff maintains a retaliation claim under Title VII and the ADEA, this Court should also dismiss that claim. First, Plaintiff failed to exhaust his

---

[1]     Jimenez separated from the company in or about January 2013 and Vasquez became general manager of the First Avenue Café. Def. 56.1 St.at n.3.
[2]     All exhibits referenced herein are attached to the Declaration of B. Noonan, Esq. dated October 29, 2014. All references to exhibits herein shall be as "Ex. _." Because Plaintiff's complaint is not in traditional paragraph form and includes various attachments, references to it shall be made by referring to the pages (*i.e.,* 1 through 17) that were automatically created on the document by the ECF system on the top right corner when it was filed.

retaliation claim by including it in his NYS DHR complaint, which is a jurisdictional prerequisite to filing his federal claim.  Second, to the extent the retaliation claim is allowed to proceed, Plaintiff (a) cannot satisfy his *prima facie* case of retaliation, and (b) cannot offer any evidence that LPQ's legitimate, non-retaliatory reason for terminating him was pretextual.

## I.    STANDARD OF REVIEW

The purpose of summary judgment is to isolate and terminate claims that are factually unsupported so as to avoid costly and unnecessary trials.  See  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  This "appl[ies] no less to discrimination cases than to ... other areas of litigation." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citation omitted). Summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c)(2).  In this context, a fact will be deemed "material" only if its existence or non-existence would "affect outcome of suit under governing law."  Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007). An issue will only be considered "genuine" if the evidence "is such that a reasonable jury could return verdict for nonmovant."  Id.  at 148. For factual issues to be considered genuine, they must have a real basis in record.  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

In order to survive a motion for summary judgment, the plaintiff must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with specific and admissible evidence showing a genuine issue for trial on each element of his/her claim. Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory

statements, or on mere assertions that affidavits supporting the motion are not credible." <u>Gottlieb</u> <u>v. Cnty. of Orange</u>, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

When this standard is applied to the facts at hand, it becomes readily apparent that LPQ is entitled to summary judgment on the entirety of Plaintiff's complaint.

## II.   PLAINTIFF'S NATIONAL ORIGIN DISCRIMINATION CLAIM UNDER TITLE VII SHOULD BE DISMISSED

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Discrimination claims under Title VII are analyzed under the burden-shifting test set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), which places upon Plaintiff the initial burden of making out a *prima facie* case of discrimination.

To satisfy his initial burden, Plaintiff must show that (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  <u>See</u> <u>Brown v. City of Syracuse</u>, 673 F.3d 141, 150 (2d Cir. 2012).  If Plaintiff establishes his *prima face* burden, the burden then shifts to LPQ to articulate "some legitimate, nondiscriminatory reason" for the adverse action.  <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 138 (2d Cir. 2008).  If LPQ does so, then Plaintiff has the burden of persuasion to establish that the decision was "pretext" for discrimination.  <u>Id</u>.  At that point, Plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely than not discrimination was the real reason" for the challenged action.  <u>Jeune v. City of New York</u>, No. CV 7424, 2014 U.S. Dist. LEXIS 2574, *13 (S.D.N.Y. Jan. 9, 2014) (Furman, J.) (emphasis in original) (<u>quoting</u> <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996)).

### A.       Plaintiff Cannot Establish The Fourth Prong Of His *Prima Facie* Case

At a minimum, Plaintiff has failed to establish the fourth prong of his *prima facie* case, *i.e.*, there is no evidence that his termination arose under circumstances giving rise to an inference of discrimination.   Generally, an inference of discrimination may derive from an employer's "ethnically degrading terms, or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group."  Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009).  As discussed below, the record is devoid of any evidence of discriminatory animus, and this Court should dismiss Plaintiff's action on this ground alone.

Here, Plaintiff merely asserts in conclusory fashion that he "was discriminated against on the basis of his national origin" by Jimenez when he was terminated.  See Cmplt. at pp. 4. However, Plaintiff cannot provide any evidence to support such a conclusion.  He cannot point to any evidence that Jimenez harbored any discriminatory animus towards him.  Plaintiff readily admits that Jimenez never made any derogatory or offensive comments regarding Plaintiff's national origin.  Def. 56.1 St. at ¶30-31.  Indeed, Plaintiff testified that Jimenez only raised Plaintiff's national origin on one occasion at around the time Jimenez transferred to the First Avenue Café in or about 2009.  Id. at ¶20-22.  During that occasion, Jimenez merely asked Plaintiff where he was from and nothing more.  Id. There is "nothing in the alleged remark[] [that] conveys anything but curiosity about a co-worker, and such quotidian workplace interactions are not tantamount to discrimination."   Higgins v. NYP Holdings, Inc., 836 F.Supp.2d 182 (S.D.N.Y. 2011).  Aside from that benign interaction, Plaintiff acknowledges that Jimenez never raised Plaintiff's national origin again during the remainder of his employment.

Instead, Plaintiff's allegations of discrimination are primarily premised upon nothing more than his *belief* that Jimenez discriminated against him because "Jimenez is Dominican" and Plaintiff had "not experienced any [issues] from other managers he worked with."[3] Def. 56.1 St. at ¶29.  When asked whether Jimenez treated him differently because Plaintiff was Puerto Rican, Plaintiff merely responded:  it "could be", "maybe so", and "I believe so," which simply amounts to nothing more than a gut feeling.  Id. at ¶32.  It is well settled that a plaintiff's *belief* or *feeling* that he was subject to discrimination is insufficient to create an inference of discrimination, as this Court previously recognized in Yu v. NYS Unified Court System Office of Court Administration, 11 CV 3226, 2013 U.S. Dist. LEXIS 97546 (S.D.N.Y. July 12, 2013) (Furman, J.).  There, the plaintiff maintained that she "felt" discriminated against because she was Asian.  Yet, this Court found that the plaintiff's claims "based wholly on her personal opinion and 'feeling' that she was not treated with respect due to her race and gender" are insufficient to create an inference of discrimination and "withstand a motion for summary judgment."  Yu, 2013 U.S. Dist. LEXIS 97546 (citations omitted); see also Nugent v. St. Luke's/Roosevelt Hosp. Ctr., No. 05 CV 5109 (JCF), 2007 U.S. Dist. LEXIS 28274, *55 (S.D.N.Y. Apr. 18, 2007) ("the plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination."); Brown v. Northrop Grumman Corp., No. 12 CV 1488 (JS)(GRB), 2014 U.S. Dist. LEXIS 116188, *17 (E.D.N.Y. Aug. 19, 2014) ("plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn.") (citation omitted);  Wilson v. Family Dollar Stores of New York, Inc., No. 06 CV 639 (DGT), 2008 U.S. Dist. LEXIS 73452, *17-18 (E.D.N.Y. Sept.

---

[3]     It is interesting to note that Plaintiff claims that he had no issue with any general managers prior to Jimenez, notwithstanding the fact that he was expressly denied overtime and had his weekly hours reduced by a general manager that pre-dated Jimenez.  Def. 56.1 St. at ¶46-47.  Yet, while Jimenez did neither of those things, Plaintiff is taking issue with Jimenez because Jimenez is "Dominican."

25, 2008) (finding that just because plaintiff "believed" discrimination "existed … does nothing to substantiate [plaintiff's] claim that Davis treated her disparately based on her gender.").

By the same token, Plaintiff's allegations that Jimenez was generically "disrespectful" towards him also fails to raise an inference of discrimination.  Specifically, Plaintiff has asserted that, by 2012, Jimenez purportedly (a) began to treat Plaintiff like a "nobody", (b) "would yell at [him]," (c) was "very disrespectful", (d) "ignore[d] [him]," (e) "don't [sic] pay no mind to [him]," and (e) "argue[d] with [him] for no reason."  Def. 56.1 St. at ¶28.  However, it is well settled that "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable."  Nakis v. Potter, No. 01 CV 10047 (HBP), 2004 U.S. Dist. LEXIS 25250, *63 (S.D.N.Y. Dec. 15, 2004).  Stated differently, the Second Circuit has consistently maintained that "Title VII is not a general civility code." Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999) (internal quotation marks and citation omitted); see also Lizardo v. Denny's, Inc., 270 F.3d 94, 102 (2d Cir. 2001) (finding that there are "many circumstances where markedly hostile treatment . . . would raise no inference of racial animus, but rather it would simply be yet another example of the decline of civility.); Kamrowski v. Morrison Management Specialist, No. 05 CV 9234 (KMK), 2010 U.S. Dist. LEXIS 103290, *40-44 (S.D.N.Y. Sept. 29, 2010) (finding no inference of discrimination where supervisor "displayed a general hostility" and made comments that were "certainly rude" and "disrespectful" but did not "objectively indicate hostility on the basis of gender").

Plaintiff is also unable to create an inference of discrimination by demonstrating that similarly situated employees of a different class were treated more favorably than him.  Such an assertion requires Plaintiff to compare himself only to employees who are similarly situated "in all material respects."  Ruiz v. County of Rockland, 609 F.3d 486, 494 (2d Cir. 2010).  "An

employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" Id. at 493-94.

Critically, Plaintiff does not maintain, nor is there any evidence, that any other porter (or any other employee, for that matter) committed the same infraction, i.e., taking off work for an entire week without giving notice and receiving approval, and remained employed. Def. 56.1 St. at ¶9; see Jackson v. City of New York, No. 11 CV 3028 (PKC), 2014 U.S. Dist. LEXIS 34769, *22-34 (E.D.N.Y. Mar. 17, 2014) (holding that plaintiff "fail[ed] to identify any similarly situated employees who were not comparably disciplined for substantially the same conduct that [p]laintiff engaged in, or was accused of engaging in.").

Rather, Plaintiff alleges in conclusory fashion that Jimenez treated two employees – Benjamin Roldan ("Roldan") and Mirtha Monge ("Monge") – who Jimenez knew prior to their employment, better than Plaintiff because they were of Dominican decent, like Jimenez. Cmplt. at pp. 12. With respect to the alleged favorable treatment, Plaintiff only asserts that Jimenez gave Roldan and Monge overtime, but not Plaintiff. Id. Such a comparison of conduct, which is unrelated to Plaintiff's termination, is not sufficient "comparable conduct" to trigger a similarly situated analysis, and, even if it was, the analysis fails.

The first problem is that Plaintiff's allegation is based on sheer speculation; he has no independent personal knowledge that Roldan and Monge were regularly given overtime. Aside from Plaintiff finding one of Roldan's time sheets on the floor one day that showed over 40 hours for one particular week, Plaintiff testified that he had "no idea" if Roldan worked overtime at any other point. Def. 56.1 St. at ¶51-52. Similarly, Plaintiff only presumed that Monge was given overtime, but testified that he did not know how may hours a week she worked because he does not "calculate people's hours or people's business." Id. at ¶56-57. Plaintiff actually

testified that he did not know if any employees worked overtime.  Id. at ¶55.  The fact of the matter is that, as a general practice, employees were not scheduled to work overtime.  Id. at ¶50.

The other fatal problem with Plaintiff's allegation is that Roldan and Monge were not similarly situated to Plaintiff in terms of their position.  Roldan and Monge were both kitchen preps, while Plaintiff was a porter, which are functionally different positions.  Def. 56.1 St. at ¶105.  A kitchen prep, on the one hand, is a skilled position that requires kitchen and cooking experience in which the prep, among other things, prepares menu items and has full comprehension of the menu.  Id. at ¶15.  Porters, on the other hand, are entry level positions that require limited, if any skills, and are responsible for, among other things, cleaning and maintaining the café.  Id. at ¶14.  Thus, Plaintiff's true comparators would be other porters, who were generally scheduled for the same number of work hours as Plaintiff.  Id. at ¶49.

In the end, Plaintiff's allegations regarding Roldan and Monge, at most, really amounts to nothing more than Jimenez favoring them because he previously knew Roldan and was related to Monge (Jimenez's sister-in-law), which is certainly not evidence of discrimination.  Def. 56.1 St. at ¶53, 58.  It is has been held that "favoritism toward workers with whom a decisionmaker is familiar does not amount to discrimination based on a protected category."  Pearson v. Merrill Lynch, No. 10 CV 5119 (RJS), 2012 U.S. Dist. LEXIS 39456, *25 (S.D.N.Y. Mar. 12, 2012).  Similarly, "as much as nepotism smack[s] of unfairness, it is not discrimination and does not provide grounds for an employment discrimination claim" and a finding of an inference of discrimination based on a similarly situated argument.  Baity v. Kralik, No. 12 CV 510 (KMK), 2014 U.S. Dist. LEXIS 145836, *85 (S.D.N.Y. Sept. 30, 2014).  In fact, Plaintiff admits that any favorable treatment by Jimenez towards Monge was likely because of their familial relationship.  Def. 56.1 St. at ¶59.

Plaintiff next alleges in his complaint that Jimenez never gave him a raise since 2010, while the "rest of the employees at [L]PQ everyone [sic] had received a raise since 2010 by Mr. Jimenez." <u>See</u> Cmplt. at pp. 4, 7, 13.   This allegation fails to create an inference of discrimination for several reasons.   First, Plaintiff fails to identify a single employee (*i.e.*, any appropriate comparators) who received a raise.   The reason for that is because, as Plaintiff admitted during his deposition, he has no personal knowledge whatsoever of whether any employees received raises after 2010.   Def. 56.1 St. at ¶63-64. Such sheer speculation is insufficient to sustain his claim on summary judgment.   Second, Plaintiff fails to comprehend that he had the second highest hourly rate of pay of $11.00 at the café.   <u>Id</u>. at ¶61.   And, at that hourly rate, Plaintiff did not qualify for further increases as a matter of company practice.   <u>Id</u>. at ¶62.   It is LPQ's practice to maintain general maximum limits on the hourly rate of pay a position may earn.   <u>Id</u>.   In that regard, a porter generally would not be entitled to increases once a porter's rate of pay was $11.00 or more.   <u>Id</u>.

Plaintiff's remaining contention is that discrimination should be inferred because Jimenez did not pay him catering delivery tips on several occasions.   <u>See</u> Cmplt. at pp. 4, 7, 14.   Plaintiff does not make this assertion in connection with any similarly-situated argument, *i.e.*, he does not identify and contend comparator-employees outside of his class did receive tips, while he did not.   Rather, it is merely a stand alone allegation against Jimenez intended to show his purported discriminatory intent; yet, such an allegation alone does nothing to create an inference of discrimination.   Nevertheless, Plaintiff's allegation fails because it is also based on speculation. Once again, Plaintiff merely *believes* that Jimenez was responsible for his tips and why he did not receive them on occasion.   Indeed, by his own resounding admission, Plaintiff testified that "[i]t could be [someone else who is reasonable for his tips].   It could be the [corporate] office. I

13

don't know."   Def. 56.1 St. at ¶70.   Such speculation is insufficient to withstand summary judgment.  See Yu , 2013 U.S. Dist. LEXIS 97546; Wilson, 2008 U.S. Dist. LEXIS 73452, *17-18; Nuget, 2007 U.S. Dist. LEXIS 28274, *55; Brown, 2014 U.S. Dist. LEXIS 116188 at*17.

Plaintiff's allegation regarding his tips also fails because it is unsupported by the record. Setting aside the fact that Plaintiff admittedly received his tips in 2010 and only allegedly began to have issues with his tips beginning some time in 2011 (even though Plaintiff could not recall any specific dates he was not paid tips except for two dates), Jimenez had little to do with the payment of Plaintiff's tips.  Def. 56.1 St. at ¶67, 73-78.   Rather, at that time, LPQ's Payroll Department was responsible for processing and distributing tips associated with catering delivers.  Id. at ¶71.  Mykel Gleez ("Gleez"), who was the assistant manager at the First Avenue Café at the time Plaintiff was terminated, was responsible for reporting the catering delivery tips to the Payroll Department, which he would do by sending an email to the department.[4]  Id. at ¶73-75.  Once catering tips were reported to the Payroll department, neither Gleez nor any other manager at the café would have anything to do with the payment of tips to employees.  Id. at ¶76.

In the end, any inference of discrimination is only further reduced, if not eliminated, by the general surrounding circumstances of Plaintiff's employment under Jimenez.  The record shows that Jimenez (a) learned of Plaintiff's national origin at the time he became the general manager and took no action against Plaintiff, (Def. 56.1 St. at ¶20-22, 26), (b) issued Plaintiff a positive performance evaluation in 2010 with a total score of 88 out of 100, (Id. at ¶80), (c) allowed Plaintiff to work his preferred schedule, (Id. at ¶48), (d) approved Plaintiff's prior vacation requests that he requested. Id. at ¶82-85.  Plaintiff was also one of the highest paid

---

[4]        Examples of emails Gleez sent to the Payroll Department reporting tips, which included Plaintiff's, from October through November 2012 are attached as Ex. H.  To the extent that a tip reported to the Payroll Department was not paid to an employee, it would have been nothing more than an administrative oversight on the part of the Payroll Department and have nothing to do with management personnel at the café. Def. 56.1 St. at ¶72.

employees in at the café from 2010 to 2012 under Jimenez's watch.  Id. at ¶61.  Plaintiff ultimately maintains that he did not have any issues with Jimenez in 2010 and that his issues only began to arise at some point in 2011 and 2012. Id. at ¶26.  Accordingly, it is not plausible to suggest that Jimenez suddenly developed an animus against Plaintiff because of his national origin (or age, for that matter) over a year after working with him.  On the contrary, if Jimenez had an animus against Plaintiff, he would not have waited three years to terminate Plaintiff, but would have done so as early as 2009.  See Chukwueze v. NYCERS, No. 10 CV 8133, 2014 U.S. Dist. LEXIS 101908, *15-17 (S.D.N.Y July 25, 2014) (Furman, J.) (finding that evidence attempting to create inference of discrimination was only further undermined when considering other facts, such as  "Gaby knew of the plaintiff's religion, rated her performance as satisfactory, granted her prior leave requests").  Moreover, the fact that Jimenez replaced Plaintiff with an individual who is Puerto Rican only undermines Plaintiff's claim one step more.  Def. 56.1 St. at ¶116; see Pearson v. Merrill Lynch, No. 10 CV 5119 (RJS), 2012 U.S. Dist. LEXIS 39456, *25 (S.D.N.Y. Mar. 12, 2012) ("An inference of discrimination *does not* exist when the plaintiff and his or her replacement are of the same protected category.") (emphasis added) (citing Pearson v. The Unification Theological Seminary, 785 F.Supp.2d 141, 155 (S.D.N.Y. 2011)).[5]

---

[5]      Plaintiff also attempts to show Jimenez's discriminatory intent by asserting that Jimenez (a) gave him additional work and made him work harder than others, and (b) refused to purchase a special delivery cart for him. Def. 56.1 St. at ¶¶37, 40, 42.  Neither allegation however holds any merit, nor supports Plaintiff's claim in the slightest.  First, with respect to the allegation of additional and harder work, Plaintiff alleges that he was asked to do occasional plumbing and air conditioning repairs.  Id. at ¶37.  Yet, Plaintiff fails to recognize that (a) his position provided for general all around assistance, (Id. at ¶14) (b) he had shown Jimenez and others that he was "handy", (Id. at ¶38) and (c) he agreed to use his "handy" skills as the café needed. Id. at ¶39.  Moreover, Plaintiff contends that Jimenez made him work harder than another porter (whom Plaintiff refers to as "Mr. Jose") who is allegedly Dominican and was Jimenez's friend.  Id. at ¶40.  However, Plaintiff ignores the fact that Jimenez terminated Mr. Jose only after a few months of employment because Mr. Jose's performance was substandard. Id. at ¶41.  Therefore, at a minimum, Plaintiff cannot compare himself to Mr. Jose when, in the end, Plaintiff was treated better than him.  Second, Plaintiff's allegation regarding the delivery cart fair no better.  Jimenez certainly did not decline to get Plaintiff a cart because of his protected class.  Rather, any such decision was based on business need and cost. Id. at ¶43.  Moreover, no other employee had a special cart purchased for them while Plaintiff was denied one.  Id. Accordingly, no other employee was treated better than Plaintiff in that regard.  See Fenner v. News Corp., Case No. 09 CIV 09832 (LGS), 2013 U.S. Dist. LEXIS 170187, at *56-57 (S.D.N.Y. Dec. 2, 2013) (no inference of

Because Plaintiff cannot establish an inference of discrimination based on his national origin, this Court should dismiss Plaintiff's Title VII claim on this ground alone.

### B. Plaintiff Cannot Establish That LPQ's Legitimate, Non-Discriminatory Reason For Terminating Him Was Pretextual

Even if Plaintiff's claim were not facially deficient, it would nonetheless fail under the final step of the <u>McDonnell Douglas</u> framework.  Here, LPQ has put forward uncontroverted evidence of a legitimate, non-discriminatory reason for Plaintiff's termination, which he cannot overcome.  Quite simply, Plaintiff was terminated because he took an unauthorized week off from work in November 2012 without providing management with notice.

Certainly, LPQ was well within its providence to terminate Plaintiff for such a reason. As a restaurant, LPQ must maintain appropriate staffing levels to ensure the effective operations of is cafes.  Def. 56.1 St. at ¶8.  To that end, while LPQ allows its employees to take time off, LPQ has a reciprocal right to expect its employees to provide notice of their requests for leave. Accordingly, terminating Plaintiff based on its belief that he took unauthorized leave without giving notice refutes Plaintiff's contention that he was dismissed *because* of discrimination.

---

discrimination where plaintiff alleged that "he was screamed at, given worse assignments, made to travel more, denied resources," while Caucasian employees were not subjected to the same treatment, because he failed to offer any admissible evidence as to the comparator employees' actual job assignments, credentials, work experience, and thus, failed to show that they were "similarly situated in all material respects") (citation omitted); <u>Amna v. New York State Dep't of Health</u>, Case No. 08-CV-2806 (CBA)(LB), 2011 U.S. Dist. LEXIS 112577, at *23-24 (E.D.N.Y. Sept. 30, 2011) (no inference of discrimination can be drawn from plaintiff's general allegations that employees outside of her protected class received better work assignments "with no explanation of how they were similarly situated in terms of team assignments, availability, departmental roles, or any other relevant consideration," because the absence of such information precludes plaintiff from showing that she was "similarly situated" to the comparator employees "in all material respects").  To the extent that Plaintiff maintains that the additional work and denial of the cart were adverse acts, such an argument would also fail.  See <u>Morrison v. Potter</u>, 363 F. Supp. 2d 586, 591 (S.D.N.Y.2005) (noting that "courts have repeatedly held that a change in duties - even from a job that the plaintiff 'cherished' - does not constitute an adverse employment action[,]" and observing that plaintiff's "subjective feelings about a change in job duties do not transform a reassignment into an adverse employment action."); <u>During v. City Univ.</u>, Case No. 01 CIV 9584 (BSJ), 2005 U.S. Dist. LEXIS 20405, at *37-39 (S.D.N.Y. Sept. 16, 2005) (finding that employer's refusal to provide tools, supplies or equipment to an employee to perform his job duties will not constitute an "adverse employment action."); <u>Lee v. Healthfirst, Inc.</u>, Case No. 04 CIV 8787 (THK), 2007 U.S. Dist. LEXIS 14891, at *14 (S.D.N.Y. March 1, 2007) (an employer's refusal to provide plaintiff with a newer model car and cell phone does not qualify as an adverse employment action).

Plaintiff may certainly attempt to dispute the basis for his termination and assert that he did submit his vacation request. Yet, no one in management ever received a written request, and no one confirmed that they witnessed Plaintiff submitting it on October 30, 2012, which LPQ's Human Resources departments verified during its investigation.[6]  Def. 56.1 St. at ¶107.  Any allegations by Plaintiff that Jimenez intentionally threw out his vacation slip would be based on nothing more than speculation.  At his deposition, Plaintiff clearly admitted that he "never [saw Jimenez] read [his] [vacation] slip" and did Plaintiff see Jimenez throw out his slip.  Id. at ¶103.  Even if Plaintiff did submit his vacation request, he was put on the schedule to work the week of November 19, 2012, but failed to check the schedule.[7]  Id. at ¶91.  Had Plaintiff done so, he would have seen his name on it and been able to inquire about his purported vacation request.  In the same vein, Plaintiff never actually confirmed with any of the managers at the café – whether it was Jimenez, Vazquez, or Gleez – if they had received his vacation request and whether he was approved to go on vacation.  Id. at ¶101.

Accordingly, this Court should grant summary judgment on Plaintiff's Title VII claim.

## III.   PLAINTIFF'S ADEA CLAIM SHOULD BE DISMISSED

Discrimination claims brought under the ADEA are subject to the same McDonnell Douglas burden shifting test on summary judgment.  See McDonald v. United States Postal Serv. Agency, 547 Fed. Appx. 23, 25   (2d Cir. 2014); 29 U.S.C. § 631(a) (ADEA is limited to

---

[6]     Assuming *arguendo* that even if Plaintiff did submit his vacation slip, which LPQ did not receive, LPQ was still legally entitled to terminate Plaintiff based on the belief that Plaintiff improperly took a week of vacation without submitting the request for time and obtaining approval.  It is well-settled that "absent discrimination, an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all."  Mohamed v. Marriot Int'l, Inc., 905 F. Supp. 141, 155 (S.D.N.Y. 1995) (quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)); Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) (noting that courts do "not sit as a super-personnel department that reexamines an entity's business decisions.").

[7]     While Plaintiff now maintains that he submitted his request on November 1 and mistakenly told human resources at the time that it was October 30, human resources was certainly justified in relying on the very information Plaintiff provided it, even if it happened to undermine his grievance, given that the café was not open on October 30.  Def. 56.1 St. at ¶ 108.

individuals who are at least forty years old).  Plaintiff must first establish his *prima facie* case of age discrimination, which requires him to prove that (1) he is a member of a protected class; (2) he was qualified to perform the essential functions of his job; (3) an adverse employment action was taken against him by his employer; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.   See Rosenfeld v. Hostos Community College, No. 10 CV 3081 (JMF), 2013 U.S. Dist. LEXIS 45880, *11-12 (S.D.N.Y. Mar. 29, 2013) (Furman, J.).  If Plaintiff does so and LPQ articulates a legitimate, non-discriminatory reason for its action, Plaintiff must prove not only that the proffered nondiscriminatory reason was pretextual but also that the discrimination was the real reason.  Id.

Here, the uncontroverted evidence clearly shows that Plaintiff cannot establish that LPQ's decision to terminate him occurred under circumstances giving rise to an inference of age discrimination.[8]  As with his Title VII claim, Plaintiff rests his age discrimination claim on nothing more than speculation and his own belief.  At his deposition, Plaintiff testified that he "really think[s] the [sic] age has something to do with [his termination] too."  Def. 56.1 St. at ¶33.  Indeed, when asked whether there is anything specific that Plaintiff could point to that leads him to believe that Jimenez discriminated against him based on his age, Plaintiff could only mutter: "[t]hat could be."  Def. 56.1 St. at  ¶35.

Ultimately, Plaintiff was only able to hypothesize that he "*believe[d]* that [Jimenez] wanted to hire Benjamin [Roldan]" to take his position as porter because Roldan was younger.  Def. 56.1 St. ¶30.  While Plaintiff's *belief* is insufficient to withstand summary judgment, as discussed in the prior section, it is also unsupported by the record.  Roldan held the position of

---

[8]        For the sake of avoiding repetition, LPQ only addresses allegations associated with Plaintiff's age claim that were not raised in the prior Title VII section above.  To the extent that Plaintiff tries to create an inference of age discrimination by pointing to arguments discussed in the Title VII section, LPQ merely incorporates its responses from that section here.

kitchen prep at the time Plaintiff was terminated and remained in that position after Plaintiff's termination.  Id. at ¶117.  Even though Roldan was not reassigned, Plaintiff's baseless allegation is only further undermined by the fact that Roldan was 43 years in 2012.[9]  Id. at ¶118.  By the same token, at the time Plaintiff was terminated, there were at least four employees, other than Plaintiff, over the age of 40 years old, one of whom was another porter, who was 53 years old and who is still employed at the First Avenue Cafe.[10]  Def. 56.1 St. ¶121.  Accordingly, Plaintiff's asserted basis for raising an age discrimination is deficient in all material respects.

Even under the unlikely event Plaintiff establishes his *prima facie* case, Plaintiff is nonetheless unable to overcome LPQ's legitimate, non-discriminatory reasons for terminating his employment.  As thoroughly outlined above, Plaintiff was ultimately terminated for taking an unauthorized week off in November 2012 without providing notice, which can be interpreted as nothing but legitimate and non-discriminatory.  Because Plaintiff cannot show LPQ's legitimate,

---

[9]     Even if Roldan was reassigned to Plaintiff's position and was younger than 40 years old, such facts would still not necessarily create an inference of discrimination.  See Deylii v. Novartis Pharms. Corp., No. 13 CV 6669 (NSR), 2014 U.S. Dist. LEXIS, *23-24 (S.D.N.Y. June 16, 2014) (finding plaintiff's allegations that he was replaced by a younger employee did not raise a claim of discrimination); Payne v. Malemathew, No. 09 CV 1634 (CS), 2011 U.S. Dist. LEXIS 80649,*2 (S.D.N.Y. July 22, 2011) (holding that plaintiff's allegations that he was the oldest person in his department and that he was replaced by two younger employees after his termination did not support an inference of discrimination); Zucker v. Five Towns College, No. 09 CV 4884 (JS), 2010 U.S. Dist. LEXIS 8544, *5-6 (E.D.N.Y. Aug. 18, 2010) (citing cases) (finding that "Mr. Zucker performed his job satisfactory, and that the College then fired him and replaced him with someone younger, by themselves, fail to raise his 'right to relief above a speculative level.'"); Besse v. Carestream Health, Inc., No. 13 CV 6370 (MAT), 2013 U.S. Dist. LEXIS 175415, *5 (W.D.N.Y. Dec. 10, 2013) (finding that allegation plaintiff was replaced with someone outside his protected class fails to create an inference of discrimination under Title VII).

[10]     During his deposition, Plaintiff did state that Jimenez called him "old man" on occasion.  However, Plaintiff maintained that the remarks were infrequent, (Pl. Dep. at 337:11-12), that he did not find them offensive (Pl. Dep. at 337:18-20), and that he found the remarks to be funny and jokes (Pl. Dep. 336:15 to 337:6, 337:15-17).  Accordingly, by his own admission, such comments could not amount to remarks that go to an inference of discrimination.  Even if Plaintiff had considered the infrequent and comical remarks offensive, (which he did not), they still would not create an inference of discrimination, particularly given that they were not connected to and part of Plaintiff's termination.  See Rosenfeld v. Hostos Community College, No. 10 CV 3081, 2013 U.S. Dist. LEXIS 45880 (S.D.N.Y. Mar. 29, 2013) (Furman, J.) (finding that stray ageist remark, without more, and with no nexus to the adverse employment action in this case would not support an inference of discrimination); Pacheco v. Comprehensive Pharmacy Services, No. 12 CV 1606 (AJN), 2013 U.S. Dist. LEXIS 164581, *28-32 (Nov. 19, 2013) (finding that "the derogatory statements [made by potential decisionmaker] are too isolated, remote and benign to give rise to an inference of discrimination" based on national origin and "not part of a larger 'pattern of derogatory statements.'").

non-discriminatory reasons for terminating his employment was pretextual, his ADEA claim must consequently fail, and this Court should grant summary judgment on it.

IV.     **PLAINTIFF'S RETALIATION CLAIM SHOULD BE DISMISSED**

    A.     **Plaintiff's Retaliation Claim Should Be Dismissed Because Plaintiff Failed To Exhaust His Administrative Remedies**

Under Title VII and the ADEA, a plaintiff must exhaust his administrative remedies by first filing a charge of retaliation with the EEOC before filing suit in federal court.  See 42 U.S.C. §2000-e-5(f) and 29 U.S.C. § 626 (d).  Failure to do so will result in the dismissal of the non-exhausted claim.  See Tanvir v. New York City Health & Hosps. Corp., 480 Fed. Appx. 620, 621 (2d Cir. 2012)("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court").  Under a narrow exception, "[c]laims not raised in an EEOC complaint, however, may be brought in federal court if they are 'reasonably related' to the claim filed with the agency."  Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006).  A claim is considered "reasonably related where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Chukwueze v. NYCERS, 891 F.Supp.2d 443, 451 (S.D.N.Y. 2012) (Furman, J.) (citing Butts v. City of New Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993)).  As this Court noted in Chukwueze, the determination generally rests on "whether the complaint filed with the EEOC gave that agency adequate notice to investigate" the non-asserted claim.  Id. (internal quotations omitted).

In that regard, courts have held that "[w]here the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive."  Fleming v. Verizon N.Y., Inc., 419 F. Supp. 2d

455, 462 (S.D.N.Y. 2005) (citation omitted); see also Cordoba v. Beau Deitl & Assocs., No. 02 CV 4951 (MBM), 2003 U.S. Dist. LEXIS 22033, *33 (S.D.N.Y. Dec. 2, 2003) (finding that "the EEOC's investigation into national origin and age discrimination claims cannot be expected to evolve into an investigation of retaliatory motive."). Courts have found this to be particularly true, and dismissed non-exhausted retaliation claims, in cases that involve EEOC charges (and state administrative complaints) which did not raise allegations of a retaliatory motive or allegations that a claimant was subject to retaliation based on a protected complaint known to the decisionmaker. See e.g. Mathirampuzha v. Potter, 548 F.3d 70, 76-78 (2d Cir. 2008) (holding that retaliation claim was not reasonably related to exhausted discrimination claim where charge described an alleged act of discrimination and did not "assert or imply a retaliatory motive."); Moguel v. Covenant House/New York, No. 03 CV 3018 (RWS), 2004 U.S. Dist. LEXIS 19342, *16-24 (S.D.N.Y. Sept. 29, 2004) (same); Bailey v. Colgate-Palmolive Co., No. 99 CV 3228 (CBM), 2003 U.S. Dist. LEXIS 8175, *33-39 (S.D.N.Y. May 14, 2003) (same).

Here, Plaintiff initially filed a complaint with the NYS DHR, which was duly filed with the EEOC. Def. 56.1 St. at ¶122-123. There can be no dispute that, in his NYS DHR complaint, Plaintiff only asserted claims for discrimination based on his national origin and age. Id. at ¶122. He did not allege that he was subject to retaliation for engaging in protected activity known to Jimenez. Id. This is only further supported by the NYS DHR's Determination and Order After Investigation (the "Determination"), in which it found no probable cause "to believe that Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." Id. at ¶124. Indeed, the NYS DHR made explicitly clear in the Determination that it only investigated and found no evidence of national origin and age discrimination. Id. After the NYS DHR dismissed the complaint, the EEOC then issued Plaintiff his right to sue

letter, in which the agency adopted the findings of the NYS DHR.  Id. at  ¶ 125.  Because

Plaintiff failed to assert a retaliation claim, Plaintiff's national origin and age discrimination

would not naturally result in an investigation based on retaliation.  Accordingly, because Plaintiff

failed to exhaust his retaliation claim, the claim may be dismissed on this ground alone.

**B.**     **Plaintiff's Retaliation Claim Should Be Dismissed Because Plaintiff Cannot Establish His _Prima Facie_ Case And Show LPQ's Legitimate, Non-Retaliatory Reason For Terminating Him Was Pretextual**

Even if this Court finds that Plaintiff administratively exhausted his purported retaliation

claim, this Court must still dismiss the claim on the merits.  A retaliation claim under Title VII

and the ADEA follows the same McDonnell Douglas burden shifting analysis on summary

judgment, which first requires Plaintiff to establish his _prima facie_ case of retaliation, and, if

successful, establish that LPQ's non-retaliatory reason for terminating him was pretextual.  See

Chukwueze, 2014 U.S. Dist. LEXIS 101908 at *19-20 (Furman, J.).    In order to establish a

_prima face_ case of retaliation, Plaintiff must establish: (1) he was engaged in a protected activity;

(2) the alleged retaliator knew that he engaged in protected activity; (3) an adverse action was

taken against him; and (4) a causal connection exists between the protected activity and adverse

action.  Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir.

2006).  At a minimum, Plaintiff cannot establish the first and fourth elements of his _prima facie_

case.  Even if he could establish his _prima facie_ burden, Plaintiff cannot establish that LPQ's

legitimate non-retaliatory reason for terminating him was pretextual.

As to the first element, Plaintiff cannot establish that he engaged in a protected activity.

It is well settled that "[t]he term 'protected activity' refers to action taken to protest or oppose

statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.

2000)(emphasis added).  In that regard, it must be shown that the employer "understood or could

reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited"

by [the applicable statute.]"  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  Therefore, an employee does not perform a "protected activity" under the law whenever he or she complains about unfair treatment *in general*.  Cruz, 202 F.3d at 566. Rather, Plaintiff must show that he complained about *unlawful discrimination* on the basis of his protected status.  Id.  Therefore, "the burden is on a plaintiff to show that he complained of unfair treatment due to his membership in a protected class and not that he complained merely of unfair treatment generally."  Chukwueze, 2014 U.S. Dist. LEXIS 101908, at *19-20 (Furman, J.) (citation and internal quotation omitted).

Here, Plaintiff alleges that he complained about Jimenez to Ryan Kilgariff ("Kilgariff"), District Manager, on a few unspecified occasions in 2012.  Def. 56.1 St. at  ¶109.  Plaintiff testified that he told Kilgariff that Jimenez was "giving him a hard time at work for no reason at all" and that he felt "disrespected," which does not amount to a protected complaint.  Id. at ¶110. Indeed, Plaintiff admits that he never complained to Kilgariff that he felt subject to discrimination because of his national origin.  Id. at ¶111.  Plaintiff did not complain to Kilgariff that he felt Jimenez was discriminating against him because he was Puerto Rican.  Id. at  ¶112. Plaintiff also never complained to Kilgariff that he felt Jimenez was discriminating against him because of his age.  Id. at  ¶113.  Nor did Plaintiff ever complain to Kilgariff that he felt Jimenez's conduct was unlawful.  Id. at  ¶114.  As a result, Plaintiff did not oppose any unlawful conduct and make a protected complaint.  See Chukwueze, 2014 U.S. Dist. LEXIS 101908 at *18-19 (finding that when plaintiff "complained in general terms to Gabby about 'what he had been experiencing'" at work, it did "not establish that Plaintiff complained, let alone in clear enough terms, about unfair treatment on account of his religion."); Sletten v. LiquidHub, Inc., No. 13 CV 1146 (NRB), 2014 U.S. Dist. LEXIS 94697, *14  (S.D.N.Y. July 10, 2014) (finding

that "[b]ecause plaintiff did not link his pay cut to his sexual orientation when lodging his grievance, [plaintiff] did not engage in a protected activity."); Henny v. New York State, No. 08 CV 10981 (KMK), 2012 U.S. Dist. LEXIS 15595, *79-81 (S.D.N.Y. Jan. 30, 2012) (finding that plaintiff failed to establish that the alleged complaint referenced any discriminatory conduct); Bennett v. Hofstra University, No. 10 CV 2195 (ADS)(ARL), 2012 U.S. Dist. LEXIS 115315, *27 (E.D.N.Y. Feb. 3, 2012) (finding that employer was unaware of protected activity because the complaint was "totally without reference, explicit or implicit, to any perceived gender discrimination").

Plaintiff's complaints are instead more appropriately characterized as *general* complaints regarding Jimenez's conduct, which is not recognized as a protected complaint. See Williams v. NYC Housing Auth., No. 07 CV 7587 (RJS), 2009 U.S. Dist. LEXIS 24888, *24-25 (S.D.N.Y. Mar. 26, 2009) (dismissing retaliation claim because plaintiff complained of "general conditions," as opposed to specific unlawful discriminatory conduct); Kamrowski v. Morrison Management Specialist, No. 05 CV 9234 (KMK), 2010 U.S. Dist. LEXIS 103290, *67-68 (S.D.N.Y. Sept. 29, 2010) (finding that "an employee's complaint to an employer about unfair treatment in general is insufficient to constitute a protected activity");

Second, assuming *arguendo* that Plaintiff's complaints to Kilgariff are protected, Plaintiff cannot establish a casual connection – the fourth element – between his termination and purported complaints. Here, Plaintiff merely alleges that he complained to Kilgariff on a few unspecified occasions in 2012.  Yet, there is no evidence that Jimenez had an improper retaliatory motive when he terminated Plaintiff based on Plaintiff's purported complaints to Kilgariff.  Plaintiff cannot point to any retaliatory comments by Jimenez related to any supposed complaint made to Kilgariff that might raise an inference his termination was in anyway related.

See, Gibbs v. NYS Dept. of Taxation & Finance, No. 04 CV 905 (FB)(LB), 2009 U.S. Dist. LEXIS 23466 (E.D.N.Y. Mar. 20, 2009) (plaintiff did not adduce any evidence of "explicit vindictive comments about [plaintiff's] filing of the [discrimination complaint]").  In fact, there is no evidence that Jimenez had knowledge of Plaintiff's purported complaints to Kilgariff, which by itself is fatal to Plaintiff's claim.

Even if Plaintiff is able to establish his *prima facie* case of retaliation (which he is not), for the same reasons discussed in the Title VII and ADEA sections above, Plaintiff again cannot overcome LPQ's legitimate, non-retaliatory reasons for terminating his employment, *i.e.*, taking an unauthorized week off in November 2012 without providing notice.  Because Plaintiff cannot show LPQ's legitimate, non-retaliation reasons for terminating his employment was pretextual, this Court should dismiss his retaliation claim in its entirety.

## CONCLUSION

For the foregoing reasons, LPQ respectfully requests that this Court grant its motion for summary judgment in its entirely, and grant all other relief that this Court deems just and proper.

Dated:     New York, New York
           October 29, 2014

                                        Respectfully Submitted,

                                        GORDON & REES, LLP

                                        By:   ___/S/ Bran Noonan_____
                                        Bran Noonan, Esq.
                                        *Attorneys for Defendant Le Pain Quotidien*
                                        90 Broad Street, 23rd Floor
                                        New York, NY  10004
                                        (212) 269-5500