```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
NORBERTO LUGO,                                                          :
                                                                        :
                                        Plaintiff,                      :    13-CV-6450 (JMF)
                                                                        :
                -v-                                                     :    OPINION AND ORDER
                                                                        :
LE PAIN QUOTIDIEN,                                                      :
                                                                        :
                                        Defendant.                      :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

    Plaintiff Norberto Lugo, proceeding *pro se*, sues his former employer, Defendant Le Pain Quotidien ("LPQ"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title 42, United States Code, Section 2000e *et seq.*, and the Age Discrimination in Employment Act (the "ADEA"), Title 29, United States Code, Section 621 *et seq.* LPQ now moves for summary judgment. For the reasons stated below, Defendant's motion is granted and Plaintiff's Complaint is dismissed in its entirety.

## BACKGROUND

    When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *See Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004). In light of this duty and mindful of the Court's obligation to grant "special solicitude" to *pro se* litigants who oppose motions for summary judgment, *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court has considered the evidence in the record despite Plaintiff's failure to submit a statement pursuant to Local Civil Rule 56.1. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("[W]here a

*pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001))).  Except where noted, the following facts are undisputed.

LPQ owns and operates a chain of "bakery-cafés."  (Decl. Leslie Ferrier (Docket No. 38) ("Ferrier Decl.") ¶ 3).  LPQ hired Plaintiff, who is Puerto Rican, as a porter at one of its cafés in November 2006.  (Decl. Brian Noonan, Esq. (Docket Nos. 41-43) ("Noonan Decl."), Ex. C ("Lugo Dep.") 16; Compl. (Docket No. 2) 4).  As a porter, Plaintiff's responsibilities included cleaning and stocking the café, making catering deliveries, and other miscellaneous tasks.  (Decl. Mario Vasquez (Docket No. 40) ("Vasquez Decl.") ¶¶ 4, 23; *see* Ferrier Decl. ¶ 5).  Plaintiff's first several years at LPQ appear to have been positive and certainly without incident.  He received multiple raises, from $8.50 per hour to $10.25 per hour and finally to $11.00 per hour — the upper limit for porters, making Plaintiff among the highest paid employees at his position. (Lugo Dep. 91; Ferrier Decl. ¶¶ 17-18).  In addition, Ivan Jimenez — the café's then-general manager, who is Dominican —gave Plaintiff at least one positive performance evaluation. (Noonan Decl., Ex. E; Lugo Dep. 125-29; *id*. at 62-63, 66-67).

At some point in 2011 or 2012, however, Plaintiff started having problems with Jimenez, and came to the conclusion that Jimenez wanted to terminate him.  (Lugo Dep. 208-09; Compl. 7).  In particular, Plaintiff felt that Jimenez was being "very disrespectful" and treating him as if he was a "nobody."  (Lugo Dep. 210, 212).  Around the same time, Plaintiff also noticed that his paychecks were missing some of the tips he had received from his catering deliveries.  (*Id.* at 252, 265-66, 427, 429).  Plaintiff then complained about the missing tips as well as his problems with Jimenez to Ryan Kilgariff, LPQ's district manager.  (Affirmation Opp'n Mot. (Docket No.

2

44) ("Lugo Affirmation") 3; Lugo Dep. 316-18).  At some point, apparently after Plaintiff's conversation with Kilgariff, Jimenez emailed Mario Vasquez and Mykel Gleez, the café's assistant managers, and instructed them to make sure that the tips were processed promptly. (Lugo Affirmation, Ex. 2 at 7; Vasquez Decl. ¶ 2; Decl. Mykel Gleez (Docket No. 39) ("Gleez Decl.") ¶ 2).  Following Plaintiff's complaint to Kilgariff, LPQ started including Plaintiff's tips in his paychecks again — although it is unclear whether that was before or after Jimenez's email to Vasquez and Gleez.  (Lugo Affirmation 3).

In November 2012, Plaintiff took a trip to Puerto Rico.  (Lugo Dep. 12).  Plaintiff maintains that on or about November 1, 2012, he requested a week off beginning November 19th by placing a note in an envelope on Jimenez's door, which apparently was the standard method by which café employees requested vacation time.  (Lugo Affirmation 4; Lugo Dep. 145-46, 149-50).  LPQ asserts that its employees did not receive the note.  (Def. Le Pain Quotidien's Local R. 56.1(a) Statement Undisputed Material Facts (Docket No. 37) ("Def.'s 56.1 Statement") ¶¶ 90, 92, 96, 101).  On November 14, 2012 — the Wednesday before Plaintiff planned to leave for Puerto Rico — Vasquez posted a preliminary schedule for the week of November 19th, showing Plaintiff working his usual 7:30 a.m. to 2:00 p.m. shift.  (Vasquez Decl. ¶¶ 14-15). Shortly thereafter, Vasquez posted a final schedule listing the same shift for Plaintiff.  (*Id.*). Plaintiff never contacted Vasquez or any other member of LPQ's management to tell them that he could not work the hours for which he was scheduled.  (*Id.* ¶ 16; Gleez Decl. ¶ 7).

On Saturday, November 17, 2012, another employee informed Vasquez that Plaintiff would be away the following week.  (Vasquez Decl. ¶ 17).  Later that day, Vasquez called Plaintiff on his cell phone.  (*Id.* ¶ 18).  Plaintiff, who was already in Puerto Rico at the time, confirmed that he would not be coming to work that week.  (*Id.*).  When Plaintiff returned to

3

work on November 26, 2012, Jimenez fired him for taking an unauthorized vacation.  (Noonan Decl., Ex. F at 1; Ferrier Decl. ¶¶ 9, 12).  Following his termination, Plaintiff filed a complaint with LPQ's human resources department, alleging that Jimenez had treated him unfairly and that his termination was improper.  (*Id.* ¶ 9).  LPQ upheld Plaintiff's termination after concluding that there was no evidence to support Plaintiff's claim that he provided the café's management with notice of his vacation.  (*Id.* ¶ 11).  On January 7, 2013, Plaintiff filed simultaneous complaints with the New York State Division of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC").  (Noonan Decl., Exs. I & J).  The NYDHR determined that there was no probable cause to sue.  (*Id.*, Ex. K).  The EEOC also declined to bring suit on Plaintiff's behalf and issued Plaintiff a notice of right to sue on August 27, 2013.  (*Id.*, Ex. L).  This case followed.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56-57 (2d Cir. 2012).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In cases such as this one, in which the non-movant bears the burden of proof at trial, "the movant may point to evidence that negates its opponent's claims or . . . identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that

4

requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex*, 477 U.S. at 323).

As noted, the Court must construe all evidence in the light most favorable to the non-movant, *see LaBounty v. Coughlin*, 137 F.3d 68, 71 (2d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48), which requires "drawing all reasonable inferences in [the non-movant's] favor," *Nicholas v. Miller*, 189 F.3d 191, 193 (2d Cir. 1999) (per curiam) (internal quotation marks omitted). To defeat a summary judgment motion, the non-movant must proffer more than a "scintilla of evidence" in support of his version of events, *Anderson*, 477 U.S. at 252, and raise more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Because the non-movant here is *pro se*, the Court must afford him "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly."). This special solicitude is not unlimited, however, and does not "relieve [a] plaintiff of [his or her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Nor is "the duty to liberally construe a [*pro se*] plaintiff's [filing] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## DISCUSSION

Plaintiff asserts claims for wrongful termination and retaliation under both Title VII and the ADEA. All four claims are governed by the well-established burden-shifting framework

adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (noting that the *McDonnell Douglas* framework applies to discrimination and retaliation claims under Title VII and the ADEA).  Under that framework, Plaintiff must first make out a *prima facie* case in support of his claim.  *See, e.g.*, *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010).  To establish a *prima facie* claim in support of his discrimination claims, Plaintiff must show that he "(1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class."  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To establish a *prima facie* case in support of his retaliation claims, Plaintiff must show (1) that he was participating in a protected activity known to his employer; (2) that he was subject to an adverse employment action that would deter a reasonable employee from pressing a discrimination claim; and (3) a causal connection between the protected activity and the challenged employment action.  *See Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014).  "The requirements [of] establish[ing] a prima facie case are minimal and a plaintiff's burden is therefore not onerous."  *Bucalo*, 691 F.3d at 128 (internal quotation marks and citation omitted).

If the plaintiff establishes a *prima facie* case, "the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination."  *Ruiz*, 609 F.3d at 492.  If the defendant offers such a reason, the burden then shifts back to the plaintiff, who must show that the defendant's proffered reason was pretextual.  *See, e.g.*, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Bucalo*, 691 F.3d at 128-29.  To do so, Plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the

legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely than not discrimination was the real reason" for the challenged actions.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (emphasis added) (internal quotation marks omitted).  Moreover, for a retaliation claim, a plaintiff must prove "but-for causation" — that is, "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).  "Put slightly differently, Plaintiff must produce sufficient evidence to show that [LPQ's] proffered reason for his termination . . . was pretextual *and* that he would not have been terminated but for his alleged complaints about discrimination."  *Chukwueze v. NYCERS*, No. 10-CV-8133 (JMF), 2014 WL 3702577, at *7 (S.D.N.Y. July 25, 2014).

With that introduction to the relevant standards, the Court turns first to Plaintiff's claims of discrimination and then to his claims of retaliation.

**A.      Plaintiff's Discrimination Claims**

Plaintiff's discrimination claims under Title VII and the ADEA fail for the simple reason that there is no evidence to support an inference of discrimination.[1]  To be sure, Plaintiff suggests that Jimenez was hostile toward him.  (Compl. 4, 7).  But hostility alone is not actionable.  *See, e.g.*, *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (noting that "mistreatment at work . . . is actionable . . . only when it occurs because of an employee's . . .

---

[1]      In the alternative, Plaintiff's claims would fail at the third stage of the *McDonnell Douglas* analysis for largely the same reasons.  That is, LPQ has indisputably proffered a legitimate, non-discriminatory reason for Plaintiff's termination — namely, his unauthorized absence from work during the week of November 19, 2012.  Under *McDonnell Douglas*, "the burden would thus shift back to Plaintiff, who would have to show — without the presumption of discrimination generated by the *prima facie* case — that Defendant's proffered reason is a mere pretext for discrimination."  *Chukwueze*, 2014 WL 3702577, at *5 (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).  Plaintiff has failed to do so.

protected characteristic"); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Title VII is not a general civility code." (internal quotation marks omitted)); *Pacheco v. Comprehensive Pharmacy Servs.*, No. 12-CV-1606 (AJN), 2013 WL 6087382, at *10 (S.D.N.Y. Nov. 19, 2013) (stating that, without more, "rude and unprofessional conduct merely indicates personal enmity rather than discrimination" (internal quotation marks omitted)). And Plaintiff's conclusory assertions aside, there is not a scintilla of evidence that Jimenez was hostile *because* of Plaintiff's race, national origin, or age. *See, e.g.*, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); *Yu v. N.Y. State Unified Court Sys. Office of Court Admin.*, No. 11-CV-3226 (JMF), 2013 WL 3490780, at *5 (S.D.N.Y. July 12, 2013) (stating that discrimination claims based solely on "personal opinion and 'feeling'" cannot survive summary judgment).

Indeed, Plaintiff testified that the only time Jimenez even mentioned his national origin was during their first meeting, when Jimenez asked Plaintiff where he was from. (Lugo Dep. 69-70; *see also id.* at 330 ("Q[:] Is there anything Mr. Jimenez said that indicated that his actions were based on your national origin? A[:] He didn't make no statement, no.")). Mere "curiosity about a co-worker" and "such quotidian workplace interactions," however, are not sufficient to give rise to an inference of discrimination. *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 191 (S.D.N.Y. 2011) (internal quotation marks omitted); *see Maqsood v. Bell Sec., Inc.*, 249 Fed. App'x 229, 230 (2d Cir. 2007) (summary order) (holding that sporadic comments made two years prior to the plaintiff's termination did not support a claim under Title VII for discrimination). And while Plaintiff did testify that Jimenez occasionally called him "old man," he conceded that "it was like more of a joke," that he himself "thought it was funny or

8

something," and that he did not take offense to the comments.  (Lugo Dep. 336-37).  Given that, and given the absence of any other evidence of discriminatory intent, such stray remarks alone do not raise an inference of discrimination.  *See, e.g.*, *Rosenfeld v. Hostos Cmty. Coll.*, No. 10-CV-3081 (JMF), 2013 WL 1285154, at *5 (S.D.N.Y. Mar. 29, 2013) (implying that potentially "ageist" comments that were "comical and made in the spirit of good fun" would not raise an inference of discrimination), *aff'd*, 554 Fed. App'x 72 (2d Cir. 2014) (summary order).  That is, such "stray remarks, without more, and with no nexus to the adverse employment action in this case, [do] not support . . . an inference" of discrimination.  *Id.* (internal quotation marks omitted); *see also Danzer*, 151 F.3d at 56 ("[S]tray remarks . . . without more, cannot get a discrimination suit to a jury." (emphasis omitted)); *Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-CV-5474 (JGK), 2008 WL 857492, at *8 (S.D.N.Y. Mar. 31, 2008) ("[T]he comments by Mr. Baba that the plaintiff was an 'old man' are too remote and disconnected from the termination to raise an inference of discrimination.").

Plaintiff cites several other ways in which he feels LPQ treated him unfairly — for example, in refusing to purchase a delivery cart for him, failing to give him additional wage increases after 2010, and failing to include his tips on some paychecks.  (Compl. 4, 7).  With respect to Plaintiff's salary, however, the evidence makes clear that Plaintiff was paid the maximum wage for a porter and thus was not, as a matter of company policy, eligible for, much less entitled to, additional raises.  (Ferrier Decl. ¶ 18).  With respect to the tips, Plaintiff himself concedes that these tips were included in his paychecks after he brought the issue to LPQ's attention.  (Lugo Affirmation 3).  In any event, even assuming *arguendo* that Plaintiff was treated unfairly in these ways, there is — again — no evidence aside from Plaintiff's conclusory assertions indicating that LPQ's actions were on account of Plaintiff's race, national origin, or

age.  *Cf. Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (providing examples of how a plaintiff in a discrimination suit might raise inference of discrimination); *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 456 (S.D.N.Y. 2008) (same).  Accordingly, no reasonable jury could conclude that LPQ's actions, even taken together, raise an inference of discrimination, let alone that they could support an ultimate finding of discrimination.

  Plaintiff's allegation that LPQ treated him differently than employees who were younger or not Puerto Rican does not call for a different result.  (*See, e.g.*, Compl. 4).  "A plaintiff may support an inference of . . . discrimination by demonstrating that similarly situated employees [outside his protected class] were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare [him]self to employees who *are similarly situated in all material respects*."  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (emphasis added) (internal quotation marks omitted); *see also Ruiz*, 609 F.3d at 494 (defining "similarly situated" to mean that there is "a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases" (internal quotation marks omitted)).  Here, no reasonable jury could find that requirement is met.  For instance, Plaintiff points to the fact that two Dominican employees, Benjamin Roldan and Mirtha Monge, were allowed to work overtime, when he was not.  (Compl. 12; Lugo Dep. 366, 373, 377).  But Roldan and Monge were both "kitchen preps," positions that required more skill and experience than the position Plaintiff held.  (Ferrier Decl. ¶ 10; Lugo Dep. 42; Vasquez Decl. ¶¶ 4-5).  *See, e.g.*, *Cooper v. Morgenthau*, No. 99-CV-11946 (WHP), 2001 WL 868003, at *7 (S.D.N.Y. July 31, 2001) (holding that employees were not similarly situated where they "held different positions [with

the employer] and did not share common job descriptions.").[2]  At bottom, there is no evidence that Plaintiff was treated differently than any similarly situated comparator, let alone that other employees who took unauthorized absences were treated more favorably.  *See, e.g.*, *Graham*, 230 F.3d at 40 (holding that to support a claim for differential treatment, plaintiffs and members of the comparison group must have engaged in conduct of "comparable seriousness" and received markedly different discipline).

In short, there is no evidence from which a reasonable jury could infer discrimination in the first instance, let alone find that LPQ's non-discriminatory reason for firing Plaintiff was a pretext for discrimination.  If anything, the evidence in the record undermines any inference that Jimenez discriminated against Plaintiff.  After all, Jimenez and Plaintiff apparently got along well for a significant time after Jimenez became general manager of the café (*see* Lugo Dep. 208, 209), even giving him a positive performance review.  (Noonan Decl., Ex. E; Lugo Dep. 125-29).  As Jimenez knew Plaintiff's age and Puerto Rican ethnicity at the time, that tends to undermine any inference of discrimination.  *See, e.g.*, *Chukwueze*, 2014 WL 3702577, at *5 (holding that an employer's knowledge of the plaintiff's religion for years without taking any adverse action and "rat[ing of] [the plaintiff's] job performance throughout that time as consistently 'satisfactory,'" undermined any inference of discrimination); *see also, e.g.*, *Altman*

---

[2]  Plaintiff asserts that Jimenez wanted to replace him with Roldan, who is younger, because Jimenez asked Roldan to clean the café after firing him.  (Lugo Dep. 332-35; *see also* Compl. 4).  But there is no evidence either that Jimenez wanted Roldan to replace Plaintiff or that Roldan was doing anything other temporarily assuming Plaintiff's responsibilities until Jimenez could find a full-time replacement.  Moreover, Roldan himself was 43 in 2012 (Ferrier Decl. ¶ 14: *see* Mem. Law Supp. Def. Le Pain Quotidien's Mot. Summ. J. Pursuant Fed. R. Civ. P. 56 (Docket No. 36) ("Def.'s Mem.") 19), and thus a member of the same protected class.  *See, e.g.*, *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481, 487 (S.D.N.Y. 2002) ("That a plaintiff is replaced by another in the same protected class weighs heavily against the inference that [he] suffered discrimination.").

*v. New Rochelle Public Sch. Dist.*, No. 13-CV-3253 (NSR), 2014 WL 2809134, at *13 (S.D.N.Y. June 19, 2014) (discussing the "same actor inference," which applies when the same actor both hires and fires an employee alleging discriminatory termination, on the theory that "it is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to members of that class" (internal quotation marks omitted)).  Additionally, at the time Plaintiff was fired, there were at least four other employees, including another porter, who were over forty years old.  (Ferrier Decl. ¶ 13: *see* Def.'s Mem. 19).  And finally, after firing Plaintiff, Jimenez apparently hired another Puerto Rican individual to replace him.  (Vasquez Decl. ¶ 22).  Together with the other evidence or lack thereof, that defeats any inference of discrimination.  *See, e.g.*, *Pearson v. Lynch*, No. 10-CV-5119 (RJS), 2012 WL 983546, at *8 (S.D.N.Y. Mar. 22, 2012) ("An inference of discriminatory intent does not exist when the plaintiff and his or her replacement are of the same protected category.").

For the foregoing reasons, Defendant's motion for summary judgment with respect to Plaintiff's discrimination claims under Title VII and the ADEA must be and is granted.

## B.    Plaintiff's Retaliation Claims

Plaintiff's retaliation claims fail for various reasons, including the fact that there is no evidence indicating that he engaged a protected activity known to his employer.[3]  Although

---

[3]    Substantially for the reasons stated in Defendant's brief (Def.'s Mem 20-22), Plaintiff's retaliation claims may also be subject to dismissal for failure to exhaust administrative remedies.  That is, although Plaintiff filed claims of discrimination with the EEOC and the NYDHR, he does not appear to have alleged that he was subject to retaliation for engaging a protected activity known to LPQ.  (Compl. 4, 8).  *See, e.g.*, *Mathirampuzha v. Potter*, 548 F.3d 70, 76-78 (2d Cir. 2008) (holding that a retaliation claim was not reasonably related to an exhausted discrimination claim where the charge described an alleged act of discrimination and did not "assert or imply a retaliatory motive").  Nevertheless, the Court need not and does not reach the issue here, as the exhaustion requirement is not a jurisdictional prerequisite but rather a condition precedent to bringing a claim in federal court.  *See, e.g.*, *Francis v. City of N.Y.*, 235 F.3d 763, 767 (2d Cir.

informal complaints can constitute protected activity, *see, e.g.*, *Treglia v. Town of Manlius*, 313 F.3d 713, 720 n.5 (2d Cir. 2002), such complaints cannot be so vague or "generalized" that the employer could not "reasonably have understood . . . that the plaintiff's complaint was directed at conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (emphasis omitted); *see also, e.g.*, *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."). Moreover, the burden is on a plaintiff to show that he complained "of unfair treatment due to his membership in a protected class" and not that he complained "merely of unfair treatment generally." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009). "To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 191 (E.D.N.Y. 2011).

In this case, the only act on Plaintiff's part that could even remotely qualify as a protected activity was his complaint about Jimenez to Kilgariff, LPQ's district manager. But Plaintiff conceded in his deposition that he did *not* suggest to Kilgariff that he had encountered any race or national origin discrimination. (Lugo Dep. 417 (Q[:] Did you say anything like you felt [Jimenez] was disrespecting you because you were Puerto Rican? A[:] No. No. No."); *id*. at 339; *see also* Lugo Affirmation 3 (stating that Plaintiff complained to Kilgariff about the missing

---

2000); *cf. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (holding that a court may not assume subject-matter jurisdiction and resolve a case on the merits).

tips and that Jimenez "was treating me like I was a nobody," but not mentioning anything about national origin discrimination)).  Similarly, Plaintiff affirmatively denied complaining to Kilgariff that Jimenez was discriminating against him on the basis of Plaintiff's age.  (Lugo Dep. 417 ("Q[:] Did you say you felt like he was disrespecting you because you were an old man? A[:] No.").  Given that Plaintiff failed to put LPQ on notice that he believed he was being discriminated against on the basis of race, national origin, or age, his retaliation claims fail as a matter of law.  *See, e.g.*, *Galdieri-Ambrosini*, 136 F.3d at 292 (holding that plaintiff failed to make a *prima facie* case as to the protected-activity prong where "none of [plaintiff's testimony] suggested any complaint of . . . discrimination"); *Chukwueze*, 2014 WL 3702577, at *6 (granting summary judgment where the plaintiff failed "to show that he complained, whether formally or informally, in sufficiently specific terms so that [the defendant] was put on notice that he believed he was being discriminated against on the basis of [a protected class]" (internal quotation marks omitted)) *Castro v. City of N.Y.*, 24 F. Supp. 3d 250, 269-70 (E.D.N.Y. 2014) (dismissing a retaliation claim on the ground that while plaintiff's statements to his employer "may reflect plaintiff's perception that his experiences in the Council Member's office were unpleasant, they cannot be understood to be statements made in an effort to oppose discrimination" and citing cases).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and the Complaint is dismissed in its entirety.  The Clerk of Court is directed to terminate Docket No. 35, to close the case, and to mail Plaintiff a copy of this Opinion and Order.

SO ORDERED.

Date: April 13, 2015
New York, New York

_____
JESSE M. FURMAN
United States District Judge